Our first case for today is 2016-50379, United States v. Jose Casillas-Casillas. You may proceed. May it please the court, counsel, Sergio Garcia for Mr. Casillas-Casillas. The sole issue in this case is the interpretation of the word passport in the Guylain-Arici. Under discourse present in interpreting words, we give words their ordinary meaning. We look at dictionaries to see how that word is ordinarily used. When you look at the word passport, it is ordinarily used for a document that is globally recognized for travel and citizenship identification purposes. The passport card, on the other hand, is a document that allows you only to go into two countries. You cannot travel by air. It's not in the statute itself under which your client was convicted refers to use of any passport. You mentioned that in the brief to some extent, but what's your response that the statute itself has already covered this? He's been found guilty of it, which sort of encapsulates also the guideline. And that is a good question, Judge. The problem is that the guideline... Not all my questions are, but I appreciate that. The problem is that the guideline does not mirror the same language. There is one important word missing from the guideline at issue, and that is the word any. Those three letters are very important. In the statute, any means what it says, any. However, the guideline does not have that word, and it was last amended in 2004. Well, how would it need to be amended now? It seems to me already covers more than the booklet regular, I think the regulation refers to it, passport. So I think your position in your brief has been that the other forms, diplomatic passport, official passport, whatever the categories are, are covered. So would they just need to reissue the guideline now without changing the wording, and it would cover all passports? Is that... Just timing that the guideline predates the creation of this, and the guideline would have to be reissued in some way? Casillas' position, Judge, is that, you know, the Sentencing Commission reviews these guidelines periodically. They are aware of the language. They scrutinize them very carefully, and they have decided not to put the same language as the statute. I mean, it's very easy to fix. However, the way it's written right now, it lends itself for the statute. Didn't the guideline cover all passports until 2008? Between 2004 and 2008, didn't it cover all passports that then existed, not just the regular, but the official and the diplomatic? We would disagree with that, Judge, just because of the missing word, any. As we said, if you look at the statute, any means what it says, any. But your brief did not take the position that since these other passports existed in 2004, it would have covered these other passports. Didn't you concede that? Well, our position... I don't want to use too strong a word. Maybe you didn't. Our position is, if you look at the language, that language of the statute also contains the word or, and it penalizes the fraudulent use of a foreign passport or its counterpart, the American passport. Now, no other country has a passport card. When you think of passport, Judge, and it's not an exhibit, but you tend to think of the booklet. Is that your passport? Yes. I've never seen a passport card until I got to El Paso. If I fly to Dublin, Ireland, and the Irish authority says, Mr. Garcia, let me see your passport. They don't mean this. They mean this. That is the ordinary meaning of the word passport. These are more like green cards. And I also brought my former... But if you go to Mexico or Canada, you can use that other card. Right. You can use that. And it is... I mean, that you can't use it coming back from Dublin, but you could use it coming back from Canada or Mexico or the islands or something, I think. Correct, Judge. And the reason why these cards were created, they were created in 2008 to alleviate the border communities. Those citizens who commute daily to work from Juarez to El Paso, from Tijuana... There's a bridge and they work. Exactly. Exactly. They wouldn't be able to do that. More like a border crossing pass. Yes. But it's still a passport. And the CFR says it's a passport. Doesn't it? Yes. And we don't contend that it is a type passport. What we are contending is that the language of the guideline, that when you apply this Court's precedent and interpret that word with its ordinary meaning, you come up with this, Judge. But, okay, your argument is that, well, they should have changed the guideline. Couldn't... I don't know that you can make the inference that they didn't mean to include it. Couldn't you say they didn't need to change the guideline because they thought it already covered it? I don't know that you can make an inference based upon the fact that they didn't change the guideline post-adoption of these types of passport cards. We think that the way it's written currently at least is ambiguous. I mean, look at the case where this came, the district where this case come from, the Western District of Texas. We have a couple of judges saying, yeah, the enhancement applies. But wouldn't we have also a couple of judges who have the same precise issue and they don't apply that? Now, and I'm glad you brought that up. Do we have... I tried to pull some sites, sorts of, there were citations to the other judges and it just appears that there are these, just these judgment forms that there don't appear to be any analysis of these cases that I could find. Did you, was there, was it from the oral hearing? Because I couldn't, you referred to us, each of you referred us to these other cases, but all it is, the judgment forms when you go to that reference and it doesn't say anything one way or the other. I did file objections because I actually tackle all these four cases with these four different judges. I did file a written objection, but I think the ruling was the oral ruling. Okay. So who, so tell me, what have the rulings been in the Western District? Okay. All of the rulings. Are they actual rulings that are making a decision on this or we don't know why the court ruled? No, no, we do. We, let's see, we have Judge Martinez and Judge Guadarrama concurring, agreeing... Judge Martinez is the district judge in the interesting case. That's correct. That's correct. And then Judge Guadarrama is on another case with the same issue. And in that case, there is an opinion that says... Yeah, that is an unpublished disposition. But it's, it explains. Yes, correct. Okay. Then the other two. The other two cases are one from Judge Montalvo and one from Judge Cardone. And in those two cases, and we provided the cites, we did not provide any attachments because it was a reply brief and we were not allowed by the rules. But we did provide the citation. Well, I went to the record citations. Okay. And those citations just have the judgment. They don't say, the court has determined that it's ambiguous. There's no analysis that I could find. Is there such analysis? And I just did not successfully find it. There are just oral decisions, Judge, where they declined to apply the enhancement. I do note that I did file a written objection precisely arguing some of the issues that I argued here. Okay. Did you make the argument that this interferes with the executive branch's authority in the district court in this case? Well, we did make an argument, Judge, and we... You did or you did not? Yes, we did. We did make the argument. Where did you make that in the district court? Either side says you didn't. No, no. We did not make it. We made it. It would be a review under plain error. But we contend that even under plain error, it would survive because it affects the sentencing outcome. The sentencing for Casillas-Casillas without enhancement was 6 to 12 months. With enhancement, it's 15 to 21. How is the court the one interfering with the State Department if it's the U.S. attorneys are taking the position? This is not like the passport case with the Israeli passport situation from the Supreme Court. Casillas-Casillas' position, Judge, is that the CFRs of the State Department provide specific definitions. Our position is that when the judiciary crafts one-size-fits-all, the word passport is synonymous with everything other definition. In our view, it's interfering at the very minimum with the sole authority of the executive branch. So that was our — that's our contention with respect to that. And as I said, even if you're under plain error, we contend that this argument survives because it affects the sentencing. We're not contending that Mr. Casillas-Casillas cannot be convicted under Section 1544. Clearly, that statute uses the words any and any means what it says. Public defender in the Southern District take the same position? Because why are the only cases we're seeing coming out of the Western District? Do you know the answer? When I arrived at the office, Judge, that's — I noticed that. And to my understanding, he had made before — had been raised before with the district judge, but he's never been — and I don't know the position of the Southern District. We get quite a few out of the Southern District, and I would assume — and I don't — and as you pointed out, this is the first impression for the Fifth Circuit. So it was — and it's only coming out of the Western District. And so I wanted to know if other public defenders' offices were adopting this position. It is not to my knowledge that they have adopted it. However, as I said, I got there to the Western District of Texas, and I noticed that nobody was raising it. And my understanding is this is the first time before the Fifth Circuit. And what other circuits have addressed this? There's no other circuit, Judge. As I said, you know, these passport cards are very unique and pertain usually to the border on the South and the North. So maybe the Ninth Circuit will get it one day, maybe the Tenth Circuit. Those circuits — Isn't this such a novel argument that other people are not making it? Well, maybe they did — Alternative explanation. Or maybe they didn't think of that, Judge, because actually, when you usually think of passport, Judge, I never heard of a passport card until four years ago. I didn't even know they existed. So — But obviously, Mr. Casillas heard of one and used it to get into the country. I represent — He knew about it. I represented Casillas in the District Court, Judge, and I can tell you that he purchased that document without even knowing what it was. He knew that it could give him access to the country, and that's why they bought it. But then again, look at the guidelines. The guidelines do not penalize other documents that can be allowed to enter the country. If you have never been previously convicted and you use a green card or a birth certificate card or a naturalization card or a border crossing card, you do not get enhancement. So it's not like the Sentencing Commission is saying, okay, we're going to penalize every document that gives you access into the country. As a matter of fact, this document gives you access from anywhere in the world. Do you need another enhancement for using those other documents? If you have never been previously convicted and never been previously deported, you do not get enhancement, Judge. Under any enhancement provisions. That's my understanding. I'm not just talking about this enhancement. Yeah, I had cases with those issues where the defendant has not been previously convicted, not previously deported, and they usually get time surges. This person was previously convicted and was previously deported. That is correct, Judge. What we are arguing here is that as a matter of law, when you interpret the word passport under the ordinary meaning rule, most people, the average person, means this, not this. Simple as that. At the very least, it's ambiguous. At the very least, it could be subject. I mean, you have four judges in the Western District of Texas. So we're supposed to interpret the guidelines as how the average person would interpret them? Is that — and you know we do all that modified categorical and all of this and, you know, all of these things, and we're supposed to be doing it the average person? Well, when it comes to the guidelines, we have precedent in this Court that says that we apply the ordinary meaning and we resort sometimes to the dictionaries. And when you use the word passport, you think of this global document that allows you to travel anywhere in the world. No visa restrictions, no country restrictions. But the CFR says this is a passport. The CFR says this is a passport. Yeah, and we're challenging just the guideline, Judge. Okay. I know the CFR says that it's a type, and that's not our contention. We're not contending that it's not a type. What we are contending is that when you apply the ordinary meaning rule under the — of the language of the guideline, you don't come out with a passport card. I didn't mean to interrupt you. Oh, that's okay. Did you have a further question? No, no, go ahead. Is this a case where the District Court said, I would give the sentence anyway, so that there's an issue that it's — the error wouldn't matter, that the Court would give the sentence? Or is this not a case where that occurred? Looking at the record with Judge — talking to Judge Martinez, it was my understanding, Judge, that he intended to sentence my client at the low end of the guideline range. The low end of the guideline range without enhancement was six months. So my guy could be home for Christmas. But now, with enhancement, which we contend it doesn't apply, he has at least 15 months. So — How fast are — when is — when is his release date? It's important that we rule promptly. If you were to design Mr. Casillas, Casillas' favor, obviously, would be December. And he will make it for Christmas. Otherwise, he's looking at next year. So for those reasons, Judge, I'm going to — I know that my time has almost run out. I urge you to apply this Court's precedent and interpret the word the way it's ordinarily meant to be interpreted. And for these reasons, Judge, we ask you to reverse and remand the district judge decision. Thank you. Thank you very much. May it please the Court, Counsel Kent Kaplan, on behalf of the United States. Your Honor, the overall fatal flaw in the defendant's position is that they're trying to parse the forms of passports. Under — and under the CFR, there is absolutely no basis to do that. The Code of Federal Regulations, which controls in this case, not the dictionary, as Mr. Garcia suggests, says there are four types of passports. There's the regular passport, the official passport, the diplomatic passport, and the passport card. When you apply — Were they eligible for the enhancement if they had used a diplomatic passport inappropriately? It would have to, Your Honor, because the guideline itself says a United States passport. And so when you go back and you don't — you don't do — one of the flaws — other flaws is that they ask the Court to review the guideline in isolation. The cases, Moskos in particular, and talk about reviewing these types of challenges in context. And in the context of this case, you look at the CFR, and it says a diplomatic passport is one type of passport. So it would apply there just the same way it would apply to a passport card or to a passport book. There would be no difference. Has any other district in the country grappled with this issue other than the Western District of Texas, to your knowledge? I assume y'all are on kind of boards where y'all share information, issues that come up in your — in the U.S. Attorney's Office and in the Public Defender's Office. Is this an issue that's percolating around the country, or at least in Texas? Or is the Western District not only sui generis but standing alone completely in this? I know of no case that has ruled directly on 2L 2.2b3a. What I can represent to the Court is that the 11th Circuit, in a different — I'll be in a different context. That's the Doe case, which we cited to the Court, has said there's no distinction between a passport card and a passport. Similarly, the 9th Circuit has looked at it, again, in a different context, but have reached the same conclusion that you don't draw a distinction between the two. And there's very good reason for that. When you go and you look at the CFR, which, of course, is generated by the Secretary of State, which has the authority to issue these documents, they don't make the distinction. It would seem like it might be a good idea for us to reach the issue, since we're having oral argument and there are cases in the Western District. But nonetheless, I need to ask, could this case be affirmed on an alternative ground that the district court would have given this sentence anyway, or does this record not support that? It's not clear from the record. So you could not say that. Judge, consider all the 3553 factors. This is a very veteran district court. It's our chief district judge in El Paso. He has a very good command of the sentencing statute. So while I can't represent to the court that I can't point to you in the sentencing transcript where he actually said, under the 3553 factors, I would reach this. I would have given it anyway. And you would have done that in your brief if you had that in your back pocket. That's exactly correct, Your Honor. We would have brought that directly to the court's attention. So yes, but I do. And to pick up on what you asked a moment ago, certainly this would be an issue that would be very helpful to have a circuit court opinion on, finally explaining that when you look at the progress of the Western Hemisphere Travel Initiative, which was to enhance border security, which led the Department of Homeland Security and the Secretary of State to get and then issue a passport card and amend their regulation to say that that's a passport, that there's ample grounds then for the court, this court, to rule that the passport card qualifies as a passport for the enhancement. And there's also sentencing guideline authority for that. When you look at Amendment 671, it talks about broadly interpreting this particular guideline 2.2L to 2.2. That may be precisely why the Sentencing Commission hasn't gone in and changed the guideline, because they don't need to. They've already told courts, we believe this should be interpreted broadly. So is the U.S. Attorney's Office asking the judiciary to exceed its authority and get to the bottom of this, because the executive branch has sole authority in matters of passport? Not at all, Your Honor. We're asking, the government is asking, this court give effect to the regulations the Secretary of State has already promulgated. And that's, again, the other side cites the Hague case for the proposition this would somehow be infringing. It's not infringing. In Hague, what Chief Justice Berger actually said was that you can restrict somebody's use of a passport, especially in an instance where, in that case, you had a rogue CIA agent going around exposing other CIA agents. It is absolutely inapplicable to this case other than for the proposition that there is no problem with a court imposing a restriction the Secretary of State imposes. And I think also I want to, before we leave this topic, I want to talk a little bit about the rule of lenity, which they bring up. And, again, the rule of lenity is not intended to be a shortcut around statutory interpretation. This is a straightforward statutory interpretation case. To the extent the court believes there's some ambiguity in the guideline itself, it need look no further than the implementing regulations which tell the court beyond any credible dispute that a passport card would qualify as a passport. We think if you look there only, you can rule and affirm the district court's decision to overrule the objection in this case. Counsel, it seems to be your position that no matter what the regulation may in the future say, new forms of passports created by the State Department, this guideline, let me back up, new forms of passports created for very limited purposes, maybe much different kinds of documents than the others, that your argument would still apply. It seems to me that's a very broad interpretation you're asking us to give. I can't necessarily foresee how many other types of passports may come up. That's my concern. There could be others. And perhaps at that point, it may require a different look. I think in getting back to something Judge Graves raised earlier, this goes also to your context in which this document was being used, in which those future passports may be used. This gentleman used this passport for the sole purpose to come into the United States. That is the sine qua non of what a passport entitles you to do. Now, if there's a future passport that may alter that context, perhaps then there might be an ambiguity. But in regards to this case, there's absolutely no ambiguity. Because he came to the border knowing that he was trying to get in and used a document that he knew didn't belong to him, which is precisely why he pled guilty under the statute. And for all those reasons, the enhancement would also apply here. And if the Court doesn't have any further questions, I'm happy to yield back the remainder of my time. We're happy to take it. Thank you, counsel. We have your argument. Thank you all. And you have saved time for rebuttal. Yes, I would just take a couple of minutes, judges. Take whatever time you need. Thank you. Thank you, Judge. Subject to the time you have. Thank you, Judge. Appreciate it. The way the guideline is written, it could be very easily fixed. I mean, the Commission looks at this language very carefully, periodically, through all the guidelines. And decided if it ain't broke, don't fix it. Could be that, couldn't it? Exactly. And precisely because it could be that, Judge, it's ambiguous at the very minimum. Because it could be that, maybe it could not be that. You have four judges in the Western District that I appear in front of them daily. And I know these judges. Judge Martinez, if you look at the record, he said, Mr. Garcia, I don't want to make any law. So we're going to send it to the Fifth. But that's what, I mean, it's not like he decided against me. No question about that. But I think at the very minimum, judges, this is subject to more than one interpretation. And if I just quickly can mention, you know, you can enter the country with other documents. And that doesn't mean they're passports. A green card, a naturalization certificate, a birth certificate, a boarding and crossing card. And they are not passports. And the guidelines do not necessarily apply an enhancement if you haven't been previously convicted or previously deported. We think that at the very minimum, the language, and this is an issue of first impression, and I think an opinion would be necessary to provide some guidance. I think at the very minimum, the language of the guideline lends itself to more than one interpretation. And so for these reasons, again, I would request that you reverse and remand the decision of the District Court. Thank you very much. Thank you.